UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| FAIRLIS G. RAMSEY, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:25-CV-184-CCB-AZ |
| CHRISTINA REAGLE, et al., | |
| Defendants. | |

OPINION AND ORDER

Fairlis G. Ramsey, a prisoner without a lawyer, filed a complaint against five defendants about the conditions of his confinement in Westville Correctional Facility's "R" dorm. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Ramsey alleges that he has been housed in an "Annex Housing Complex" at Westville Correctional Facility ("WCF") since September 24, 2024. ECF 1 at 5, 10. He complains about a variety of conditions and alleges that the building has fallen into disrepair such that it poses a threat to his safety. Ramsey asserts that Governor

Holcomb stated in 2022 that "Westville Correctional Facility has outlived its usefulness. It is too dangerous for our staff and the offender population[.]" ECF 1 at 6.[1]

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id*. (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted); *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate

---

[1] It is unclear when or where this statement was made, but it is similar to a statement made in connection with the announcement of plans to build a new correctional facility in Westville. *See* https://www.in.gov/idoc/news-media-and-publications/new-correctional-facility-in-westville/ (last visited Oct. 16, 2025)("Today, the facility is at the end of its useful life; posing severe safety and security risks for our staff and the incarcerated population housed there.").

complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference."). The fact that a government official knows of an alleged wrong does not automatically mean he or she is liable for failing to intervene. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Prison officials who had actual knowledge of a substantial risk to a prisoner's health or safety may avoid liability if they responded reasonably even if the harm was not ultimately diverted. *Farmer*, 511 U.S at 844; see also *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006).

Ramsey complains about many different conditions in the building where he is housed. First, he complains about a shortage of operable sinks and showers. The building where Ramsey is housed has four floors, and each floor houses between 85-96 inmates. Each floor has five or fewer sinks[2] and two or fewer shower heads. Ramsey explains that the pipes are antiquated and, if one floor has a plumbing problem, it can impact the whole building. He further alleges that toilets and sinks regularly malfunction. But Ramsey has not explained how the alleged shortage of functional sinks and showers has impacted him. He does not indicate how often he is able to shower or use the sink. The importance of the daily shower to the average American is cultural rather than hygienic . . .." *Davenport v. DeRobertis*, 844 F.2d 1310, 1316 (7th Cir. 1988). Allowing just one shower a week does not amount to a constitutional violation. *See Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012). While it would be convenient for additional sinks and showers to be available for inmate use, it cannot be plausibly inferred from the factual allegations in the complaint that the existing sinks

---

[2] The complaint is somewhat unclear in that it indicates that the floors have both five or fewer sinks and three or fewer sinks. ECF 1 at 6.

3

and toilets have prevented Ramsey from having constitutionally adequate access to sinks and showers for hygiene purposes. Therefore, he may not proceed on a claim based on the allegedly inadequate number of functioning sinks and showers.

Ramsey also alleges that pipes sometimes burst, and this has led to flooding. He does not, however, point to any specific incident of flooding or indicate how the flooding impacted him. Therefore, he cannot proceed on a claim based on his conclusory allegations that burst pipes have caused flooding.

Additionally, Ramsey alleges that the building where he resides is infested with mice to the point where mouse traps and poison have little effect. Prolonged exposure to infestations can amount to an Eighth Amendment violation. *See Davis v. Williams*, 216 F.Supp.3d 900, 907-08 (N.D.Ill. 2016). Ramsey, however, provides no additional details about the mice or how they have impacted him. *Smith v. Dart,* 803 F.3d 304, 312 (7th Cir. 2015) (inmate failed to state a claim when he alleged the jail was infested with mice and cockroaches but did not provide sufficient details which "left [the court] in the dark as to how extensive the infestations are and how the pests affect him").

Ramsey includes several other conclusory allegations in his complaint. He alleges that the roof is damaged to the point where water drips throughout the building every time it rains or snows, and ceiling tiles have buckled and fallen. Windows are allegedly damaged, leading to cold conditions during winter. The heat often malfunctions for days at a time. The air is stale and dusty because the building's air handlers are no longer used. The building allegedly lacks a fire alarm and sprinkler systems. There is allegedly mold and mildew in the showers and on restroom ceilings,

4

which make it difficult to breath. The factual allegations related to these conditions are too vague to state a claim.

Ramsey also claims that the water is contaminated. Ramsey reports that, as soon as he began using the water at WCF on September 24, 2024, his skin began to itch and burn. By October 1, 2024, he had painful rashes that he believes are linked to the water and he sought medical treatment.[3] He notes that sometimes the water in his building is deep orange or brown and that there is soil in the water. This can happen two to four times a day and can last from ten minutes to a half hour. Ramsey believes that the water is contaminated with high levels of bacteria, lead, and other metals. He further alleges that the administrative staff at WCF and the IDOC Central Office must know this because the contractors working at WCF are discovering contaminated soil as they demolish buildings. Foul smelling soil has allegedly been removed, and new soil has been brought in due to the contamination.

Ramsey's belief that the water contains contaminated soil, bacteria, lead, or other metals, as opposed to rust,[4] appears to be based on speculation. Nonetheless, he has provided details regarding the condition of the water and how he has been harmed. He has not, however, linked his allegations about the damages to his skin from the water to any particular defendant. Ramsey indicates that he wrote Commissioner Reagle about the conditions at WCF generally, and that he sent each of the defendants a copy of a

---

[3] Ramsey complains about both delays in being seen by medical staff and the adequacy of his care, but he does not link those allegations to any defendant named in this action.

[4] While concerns about drinking rusty water are understandable, "[t]here are no recognized side effects of drinking rusty water." https://www.reference.com/health/side-effects-drinking-rusty-water-728e5297a7bda2ed (last visited Oct. 16, 2025). "There are no enforceable federal limits on the amount of rust in drinking water." *Id*.

5

grievance he filed in January 2025 that outlined his claim that the water was causing him to have a rash. ECF 1-1 at 8-9. There is, however, no general respondeat superior liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id.* at 596. Supervisors can be held liable if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). But, "[p]ublic officials do not have a free-floating obligation to put things to rights . . . no prisoner is entitled to insist that one employee do another's job." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). *See also Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017) (quoting *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009)). As the Seventh Circuit explained in *Burks*:

> The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under §1983 for not being ombudsmen. [The] view that everyone who knows about a prisoner's problem must pay damages implies that [a prisoner] could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care.

*Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Likewise, Ramsey cannot hold high-ranking individuals at WCF and the IDOC liable for decisions made by others about where to house Ramsey and whether his skin condition required that he be offered some alternative to bathing with the water available in his dorm. Ramsey has not pled facts from which it can be inferred that any named defendant was deliberately

6

indifferent to his conditions of confinement based on the mere receipt of a grievance documenting Ramsey's opinion about the cause of his skin problems. Therefore, Ramsey may not proceed on a deliberate indifference claim based on the condition of the water at WCF.

This complaint does not state a claim for which relief can be granted.[5] A complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (quotation marks, citations and footnote omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quotation marks and brackets omitted). Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her

---

[5] Even if the complaint stated a claim, the court could not grant Ramsey's request that he be released from WCF early due to the conditions. That relief is not available in this civil rights lawsuit. "[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement . . .." *Heck v. Humphrey*, 512 U.S. 477, 481 (1994).

7

that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original).

If Ramsey believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) **GRANTS** Fairlis G. Ramsey until **November 10, 2025**, to file an amended complaint; and

(2) **CAUTIONS** Fairlis G. Ramsey that, if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on October 17, 2025.

                                                            /s/*Cristal C. Brisco*
                                                            CRISTAL C. BRISCO, JUDGE
                                                            UNITED STATES DISTRICT COURT